UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN EUGENE BARBEE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No.:  21-CV-300-WVG<br><br>**ORDER ON JOINT MOTION FOR JUDICIAL REVIEW** |

　　　This action arises from the Commissioner of Social Security's ("Commissioner" or "Defendant") denial of Alan Barbee's ("Plaintiff") application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. On January 5, 2022, the Parties filed a Joint Motion for Judicial Review ("Joint Motion") pursuant to the Court's October 4, 2021 Amended Scheduling Order. (Doc. Nos. 16; 18.) The Joint Motion exclusively addresses whether the administrative law judge ("ALJ") properly considered Plaintiff's doctor's opinion in finding Plaintiff not disabled. (Doc. No. 18.) As explained below, the Court answers affirmatively. Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

## I. PROCEDURAL HISTORY

On May 9, 2012, Plaintiff filed an application for SSI benefits ("initial application"). (AR 280-286). Plaintiff contended he stopped working on June 1, 2006, due to mental illness, a back injury, seizures, and a head injury. (AR 302). The Commissioner denied Plaintiff's application initially and upon reconsideration. (AR 237-239.) On July 16, 2013, ALJ Paul Coulter convened a hearing on Plaintiff's initial application. (AR 60-79.) Plaintiff, his attorney, and vocational expert Gregory S. Jones ("Mr. Jones") appeared at the hearing; Plaintiff and Mr. Jones both testified. (*Id*.) On August 28, 2014, ALJ Coulter determined Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. (AR 54). ALJ Coulter concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), there were jobs that existed in significant numbers in the national economy that Plaintiff could still perform. (AR 53). On October 24, 2014, Plaintiff requested that the Appeals Council review ALJ Coulter's decision. (AR 35-37). On May 11, 2016, the Appeals Council denied Plaintiff's request and, in doing so, finalized ALJ Coulter's decision. (AR 1).

On June 22, 2016, Plaintiff filed a subsequent application for Title XVI disability benefits ("subsequent application"). ALJ Leland H. Spencer presided over the hearing on Plaintiff's subsequent application and ultimately found Plaintiff was disabled as of November 18, 2016. (AR 7-9.) On July 9, 2016, following ALJ Spencer's favorable decision, Plaintiff commenced a civil action seeking reversal of ALJ Coulter's August 28, 2014 adverse decision. (AR 707-708.) On August 31, 2017, the District Court issued its decision in Plaintiff's favor and remanded the case for further proceedings. (AR 711-721). Upon remand, ALJ Randolph E. Schum was tasked with resolving whether Plaintiff was disabled prior to November 18, 2016. (AR 758). In the remanded administrative proceedings, Plaintiff was given the opportunity to be heard and submit any new or additional evidence, if any, to complete the administrative record. (AR 758.)

///

///

On December 23, 2019, ALJ Schum issued a decision finding Plaintiff was not disabled between May 9, 2012 and November 18, 2016, consistent with ALJ Coulter's findings on Plaintiff's initial application. (AR 66-671). On December 22, 2020, the Appeals Council answered Plaintiff's request for further review of ALJ Schum's decision and found substantial evidence supported his decision. (AR 656-625.) In doing so, the Appeals Counsel affirmed ALJ Schum's determination of non-disability. (AR 656-62). On February 18, 2021, Plaintiff brought this civil action. (Doc. No. 1.)

## II. FACTUAL BACKGROUND

### a. Plaintiff's Medical History

Plaintiff is a 61-year-old male who claims he has been unable to work since June 1, 2006. (AR 302). Prior to 2006, Plaintiff worked as a street repairman and a laborer. (AR 214). In early 2011, Plaintiff saw a clinical psychologist at the Department of Corrections and Rehabilitation because he was suffering from auditory and visual hallucinations. (AR 405-410). At the time, Plaintiff was diagnosed with mild depression and psychotic disorder. (AR 406-408).

Plaintiff has a history of seizures, which began in or around 2004 after Plaintiff sustained head trauma.[1] (AR 577). On December 10, 2012, Dr. Boris Khamishon conducted a neurological evaluation of Plaintiff after Plaintiff reported reoccurring seizures. (*Id.*) Dr. Khamishon noted Plaintiff experienced grand mal seizures that caused convulsions, loss of consciousness, and rare urinary incontinence along with complex partial seizures that were not accompanied by full loss of consciousness. (*Id.*) During the examination, Dr. Khamishon observed Plaintiff was well nourished and well groomed, and that he appeared alert and cooperative. (AR 578). Dr. Khamishon also reported Plaintiff had intact language, concentration, and attention span. (*Id.*) As part of Plaintiff's diagnosis, Dr. Khamishon recommended a trial of Lamictal in addition to Dilantin with possible

---

[1] Plaintiff has been seen by numerous doctors for various ailments. The only medical testimony at issue here is Dr. Khamishon's. Accordingly, this Order exclusively discusses Dr. Khamishon's testimony and does not reference other doctors' medical evaluations of Plaintiff.

tapering off of the Dilantin in the future. (AR 464). On the same day, Dr. Khamishon reported Plaintiff's brain electroencephalogram ("EEG") was normal and that there were no abnormalities. (AR 465).

On July 29, 2013, Plaintiff's brain magnetic resonance imaging ("MRI") was found to be normal. (AR 567). On June 18, 2014, Dr. Khamishon completed a "Seizure Disorder Residual Functional Capacity Questionnaire" ("Questionnaire") where he affirmed Plaintiff's seizure disorder diagnosis and that he saw Plaintiff every two to three months. (AR 652-55). Dr. Khamishon noted Plaintiff still suffered from breakthrough seizures despite taking preventative medication. (AR 653). Dr. Khamishon also opined Plaintiff's seizures would likely disrupt Plaintiff's co-workers' work, require more supervision than an unimpaired worker, and compel an employer to render immediate aid if Plaintiff suffered a seizure at work. (AR 653-54). Dr. Khamishon also noted Plaintiff would likely be absent at least four days per month from work as a result of the impairment. (AR 654). On October 8, 2015, after Plaintiff underwent another brain EEG, Dr. Khamishon reported Plaintiff's test results were normal and showed no abnormalities. (AR 1208).

**b.  ALJ Schum's Findings**

To assess Plaintiff's purported disability, ALJ Schum conducted the five-step sequential analysis applicable to claims for SSI benefits. As discussed below, ALJ Schum concluded Plaintiff did not meet the definition of a disabled individual from May 9, 2012, to November 17, 2016. (AR 686).

At step one, ALJ Schum concluded Plaintiff had not engaged in substantial gainful activity since May 9, 2012. (AR 674). At step two, ALJ Schum determined Plaintiff had certain severe impairments including degenerative changes of the lumbar spine with sciatica, obesity, seizure disorder, headaches, asthma, schizophrenia, and depression. (AR 674-75). At step three, ALJ Schum found Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (AR 675-78). Accordingly, ALJ Schum determined

Plaintiff had the residual functional capacity to perform light work.[2] (AR 678). From there, ALJ Schum concluded Plaintiff could understand, remember, and carry out simple instructions and tasks. (AR 678). ALJ Schum relatedly opined Plaintiff could also perform in a normal pace without production quotas and respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others was casual and infrequent. (AR 678). Concurrently, ALJ Schum determined Plaintiff should not work in a setting that included constant or regular contact with the general public or more than infrequent handling of customer complaints. (AR 678). At step four, ALJ Schum determined, because Plaintiff lacked past relevant work, there was no issue of the transferability of job skills. (AR 685). At step five, ALJ Schum found Plaintiff was not disabled as there were significant numbers of jobs in the national economy that Plaintiff could perform considering his age, education, work experience, and RFC. (AR 685).

Plaintiff's contention that ALJ Schum did not properly consider Dr. Khamishon's opinion implicates step three of the above analysis, specifically as it pertains to ALJ Schum's RFC finding. ALJ Schum assigned no weight to the Dr. Khamishon's opinion, explaining Dr. Khamishon's limitations assessment contradicted his own clinical observations and largely normal imaging and testing of Plaintiff's brain activity. (AR 656). ALJ Schum also discounted Dr. Khamishon's finding that Plaintiff needed to miss at least four days or more of work per month, determining that Dr. Khamishon's conclusion was speculative and hinged on Plaintiff's subjective complaints. (*Id*.)

/ / /

/ / /

/ / /

/ / /

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

## III. APPLICABLE LAW

The Social Security Act ("Act") established the Social Security Administration ("Administration") and charged the Administration with the duty to administer the SSI program. 42 U.S.C. § 901. The Act authorizes the Administration to create a system to determine who is entitled to benefits and which unsuccessful claimants may obtain review of adverse determinations. 42 U.S.C. § 423. Before turning to ALJ Schum's decision in this case, the Court first surveys the five-step process the ALJ must follow before resolving an administrative claim for benefits.

### a. The SSA's Sequential Five-Step Process

An ALJ evaluates a disability benefits claim by considering five criteria, as set forth in 20 C.F.R. sections 404.1520, 416.920:

1. Is the claimant performing substantial gainful activity?;
2. Does the claimant have a severe impairment?;
3. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?;
4. Can the claimant perform their past relevant work?; and
5. Based on the claimant's residual functional capacity and their age, education, and work experience, can they perform other work that exists in significant numbers in the national economy?

The ALJ evaluates each step in sequential order. If the ALJ determines the claimant is not disabled at any step of the evaluation process, the evaluation terminates. Each step is discussed in greater detail below.

### i. Step One

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant's work qualifies as a substantial gainful activity, then the ALJ will find the claimant not disabled regardless of their medical condition, age, education, and work experience. 20 C.F.R. § 416.920(b).

///

### ii. Step Two

At step two, the ALJ considers the medical severity of the claimant's impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). When considering the severity of the impairments at issue, the ALJ must determine whether the impairments "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the ALJ concludes the claimant's impairments are not medically severe, the ALJ must find the claimant not disabled. *Id*.

### iii. Step Three

At step three, the ALJ considers the medical severity of the claimant's impairments to determine if the impairments meet or equal one of the listed disabilities. 20 C.F.R. § 416.920(a)(4)(iii). An ALJ conclusively presumes a claimant is disabled if the impairments meet or equal one of the listed impairments. 20 C.F.R. § 416.920(d); *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) ("[S]tep three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."). If the ALJ concludes the impairments do not meet or equal the listed impairments, the ALJ continues to step four.

Before moving to step four, the ALJ must determine the claimant's RFC, which evaluates the impairments and any related symptoms that "may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 416.945(a)(1). The RFC assessment is used during "step four of the sequential evaluation process to decide if [the claimant] can do [their] past relevant work." 20 C.F.R. § 416.945(a)(5)(i). The RFC assessment is also used at step five to determine if the claimant "can adjust to any other work that exists in the national economy." 20 C.F.R. § 416.945(a)(5)(ii).

///
///
///
///

### iv. Step Four

At step four, the ALJ applies the claimant's RFC to determine whether the claimant can perform the requirements of their past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant either cannot perform or does not have any past relevant work, the ALJ proceeds to step five. 20 C.F.R. § 416.920(h).

### v. Step Five

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to determine if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If the claimant can perform other work, then the claimant is not disabled. Conversely, if the claimant cannot perform other work and meets the duration requirement, then the claimant is disabled. To support a finding that a claimant is not disabled at step five, the Administration is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [their] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c)(2).

### b. SSA Hearings on Disability Benefits Applications and the Appeals Process

In accordance with the Commissioner's delegation, the Office of Disability Adjudication and Review administers a nationwide hearings and appeals program. The SSA Regulations provide for a four-step process for administrative review of a claimant's application for disability benefits. 20 C.F.R. §§ 416.1400, 404.900. Once the Administration makes an initial determination, three more levels of appeal exist: (1) the Commissioner's reconsideration; (2) a hearing before an ALJ; and (3) the Appeals Council's review of an administrative decision. *See id*. If the claimant is not satisfied with the decision at any step of the process, the claimant has 60 days to seek administrative review. 20 C.F.R. §§ 404.933, 416.1433. If the claimant does not request review, the decision becomes the Commissioner's binding and final decree. 20 C.F.R. §§ 404.905, 416.1405.

///

A network of administrative field offices and state disability determination services initially process applications for disability benefits. The processing begins when a claimant completes both an application and an adult disability report and submits those documents to one of the Administration's field offices. If the Administration denies the claim, the claimant is entitled to a hearing before an ALJ in the Administration's Office of Disability Adjudication and Review. 20 C.F.R. §§ 404.929, 416.1429. A hearing before an ALJ is informal and non-adversarial. 20 C.F.R. § 404.900(b).

If the claimant receives an unfavorable decision by an ALJ, the claimant may request review by the Appeals Council. 20 C.F.R. §§ 404.967, 416.1467. The Appeals Council will grant, deny, dismiss, or remand a claimant's request. 20 C.F.R. §§ 416.1479, 404.979. If a claimant disagrees with the Appeals Council's decision or the Appeals Council declines to review the claim, the claimant may seek judicial review in a federal district court. 20 C.F.R. §§ 404.981, 416.1481. If a district court remands the claim, the claim is sent to the Appeals Council, which may either decide or refer the matter to another ALJ. 20 C.F.R. § 404.983.

**IV.   STANDARD OF REVIEW**

District courts defer to the Commissioner's decision unless the decision is based on legal error or is not supported by substantial evidence. *Smolen v. Charter*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Courts review the entire administrative record, weighing both the evidence that supports and detracts from the ALJ's decision. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). When reviewing the record, particular deference is given to the ALJ because the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Id*. If the evidence is susceptible to more than one rational interpretation, the court will not disturb the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## V.     DISCUSSION

Plaintiff argues ALJ Schum erred by rejecting Dr. Khamishon's opinion without articulating specific and legitimate reasons supported by substantial evidence. (Doc. No. 20). Plaintiff disputes the ALJ's two reasons for rejecting Dr. Khamishon's opinion, which were (1) Dr. Khamishon's opinion as to Plaintiff's limitations contradicted Dr. Khamishon's own clinical observations as well as the objective medical record; and (2) Dr. Khamishon's opinion was speculative and heavily reliant on Plaintiff's subjective complaints. Defendant responds that ALJ Schum appropriately discounted Dr. Khamishon's opinion based on its inconsistency with the objective medical record.

In support of his proposition, Plaintiff relies on *Lester* which states, "like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1996). Plaintiff correctly identifies the opinion of a treating physician is entitled to greater weight than that of a non-examining physician. *Id.* However, a treating physician's opinion is not dispositive and can be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* Thus, an ALJ meets the burden of the substantial evidence standard if he sets "out [a] detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).).

Importantly, *Lester* concedes courts have "upheld the Commissioner's decision to reject the opinion of a treating or examining physician, based in part on the testimony of a non-examining medical advisor." *Lester*, 81 F.3d at 830-831 (citing *Magallanes*, 881 F.2d at 751). Specifically, in *Magallanes*, the court found "an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion." *Magallanes*, 881 F.2d at 751-52. Similarly, in *Andrews*, the court found the ALJ gave specific, legitimate reasons for rejecting a psychologist's

opinion because it "was based on a review of the medical records, was consistent with the written reports of four other experts and with [the claimant's] testimony, and legitimately controverted [the psychologist's] observations, opinions and conclusions." *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Therefore, the Court made clear it would defer to the ALJ's judgment where the ALJ provides substantial evidence based on the entire record in support of his evaluation of a doctor's opinion.

Here, the Court finds ALJ Schum provided specific and legitimate reasons in assigning no weight to Dr. Khamishon's opinion. (AR 678-85). Taken together, the reasons support ALJ Schum's rejection of Dr. Khamishon opinion, the exclusive issue upon which Plaintiff's appeal of ALJ Schum's decision turns. Notably, ALJ Schum appropriately discounted Dr. Khamishon's opinion because Dr. Khamishon's limitations assessment of Plaintiff was belied by the objective medical evidence and Dr. Khamishon's own clinical observations. A survey of Plaintiff's medical record demonstrates Dr. Khamishon's notes as well as imaging and testing of Plaintiff's brain activity were unremarkable and largely normal. Even so, Dr. Khamishon concluded Plaintiff suffered from significant limitations. For example, in June 2014, Dr. Khamishon completed an RFC form indicating Plaintiff's seizures would disrupt work, require additional supervision, and force Plaintiff to miss at least four days of work per month. (AR 652-55). ALJ Schum rightfully found Dr. Khamishon's own clinical observations undermined Dr. Khamishon's opinion.

Prior years of Plaintiff's medical records as maintained by Dr. Khamishon further corroborate Plaintiff's lack of abnormal function, rather than the existence of any abnormality. For instance, in 2012, Dr. Khamishon reported Plaintiff's brain electroencephalogram ("EEG") was normal; consistent with these results, Dr. Khamishon noted no abnormalities and only recommended a change in medication. (AR 464-65). Additionally, in 2013, Dr. Khamishon reported Plaintiff's brain magnetic resonance imaging ("MRI") was normal. (AR 567). In considering Plaintiff's medical history and most recent examinations with Dr. Khamishon, ALJ Schum properly found Dr. Khamishon's opinion was not supported by Dr. Khamishon's own findings and contradicted the bulk of the objective medical evidence. Like the ALJ in *Magallanes*, ALJ

Schum relied upon laboratory test results and the doctor's assessments of those laboratory test results and related notes to determine the appropriate weight to assign to the doctor's opinion. ALJ Schum's reasoning can only be construed as reasonable, given the contradictions between Dr. Khamishon's limitations assessment and the objective medical record and Dr. Khamishon's patient notes.

Cementing the reasonableness of ALJ Schum's assessment of Dr. Khamishon's opinion is that Dr. Khamishon's opinion was "heavily reliant on the claimant's subjective complaints, which render them not compelling." (AR 683). ALJ Schum found particularly speculative the amount of time Dr. Khamishon believed Plaintiff would miss work due to seizures. Dr. Khamishon opined Plaintiff would miss at least four days of work per month in light of Plaintiff's purported limitations. (AR 654.) However, the medical record demonstrates otherwise. In a June 2012 Seizure Questionnaire, Plaintiff described his seizures as being controlled by medication. (AR 343-44). Six months later, in December 2012, Plaintiff complained his seizures were usually nocturnal but also occurred during the day. (AR 577). The seizures were grand mal seizures that caused Plaintiff to convulse, lose consciousness, and infrequently suffer from urinary incontinence along with complex partial seizures that were not accompanied by a full loss of consciousness. (*Id.*) In May 2013, Plaintiff reported a past history of seizures that were currently controlled with medication. (AR 555). In September 2013, Plaintiff reported to Dr. Khamishon he had not suffered a "bad" seizure in two months. (AR 573). In December 2013, Plaintiff reported his medication was working well and that he experienced several nocturnal seizures and a single breakthrough seizure. (AR 572).

In March 2014, Dr. Khamishon noted Plaintiff was suffering "blackouts" and changed Plaintiff's seizure medication. (AR 568). In a June 2014 RFC Questionnaire, Dr. Khamishon reported Plaintiff averaged two seizures a week that lasted three minutes on average. (AR 652). In January 2015, Dr. Khamishon reported Plaintiff had not had any grand mal seizures. (AR 1212). In October 2015, Dr. Khamishon reported Plaintiff had one seizure two weeks prior. (AR 1209). In February 2016, while Plaintiff was taking a new medication, Dr. Khamishon noted the Keppra trial worked despite that Plaintiff still

experienced seizures. (AR 1206). In July 2016, Plaintiff reported to Dr. Khamishon that the frequency of his seizures had decreased to once or twice weekly. In March 2017, during Plaintiff's neurologic follow-up examination, Dr. Khamishon reported that Plaintiff stated he experienced an average of two to three seizures per month. (AR 1198).

Based on the objective medical record and Dr. Khamishon's notes, ALJ Schum concluded Dr. Khamishon heavily relied on Plaintiff's self-serving statements to define Plaintiff's limitations, which often contradicted Plaintiff's examination results. The objective record also made clear Plaintiff's seizures changed with respect to duration, frequency, and the time of day; thus, no consistent extrapolation could be made regarding the extent of Plaintiff's seizure condition. In turn, ALJ Schum appropriately discounted Dr. Khamishon's opinion for its heavy reliance on Plaintiff's personal characterizations of his symptoms. Based on ALJ Schum's consideration of relevant doctor reports, progress notes, objective examination records, and Plaintiff's own statements, the Court finds no basis to undo ALJ Schum's decision to discount Dr. Khamishon's opinion for its inconsistency with even Dr. Khamishon's own notes regarding Plaintiff's medical condition.

Finally, and equally important, ALJ Schum's assessment of Dr. Khamishon's opinion is consistent with the weight ALJ Schum assigned to other physicians' and agency opinions in this matter, which Plaintiff does not dispute. ALJ Schum gave partial weight to Dr. Taylor-Holmes' opinion because the opinion accounted for objective medical evidence concerning Plaintiff's degenerative disc disease, epilepsy, asthma, and seizure precautions. Specifically, Dr. Taylor-Holmes opined Plaintiff was limited to medium exertion with certain limitations, a conclusion which ALJ Schum determined was aligned with the objective record. (AR 761-76). Similarly, ALJ Schum assigned partial weight to Dr. Funkenstein's opinion, which found the same limitations as Dr. Taylor-Holmes, and went a step further to limit Plaintiff to light exertion activities. (AR 777-95). As with Dr. Taylor-Holmes, ALJ Schum found Dr. Funkenstein's opinion merited partial weight based on its alignment with the objective evidentiary record. (*Id.*) Additionally, ALJ Schum appropriately assigned partial weight to Disability Determination Services ("DDS") consultant opinions in light of the objective evidence, as DDS found Plaintiff "limited to

simple routine repetitive work like activity." (AR 774). As noted, DDS' findings were consistent with Dr. Taylor-Holmes and Dr. Funkenstein's opinions. Given the consistency in his treatment of each of the opinions before him, ALJ Schum correctly assigned partial weight to Dr. Taylor-Holmes, Dr. Funkenstein, and DDS consultants' opinions and no weight to Dr. Khamishon's opinion. The Court finds no error in ALJ Schum's reasoning that would support undermining his ultimate decision to assign no weight to Dr. Khamishon's opinion.

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment. The Clerk of the Court SHALL ENTER judgment accordingly.

**IT IS SO ORDERED.**

DATED: June 28, 2022

_____
Hon. William V. Gallo
United States Magistrate Judge